392 A.2d 792

COMMONWEALTH of Pennsylvania ex rel. PENNSYLVANIA SECURITIES COMMISSION,

v.

RELIANCE DEVELOPMENT CORP., Trans Corporation, Trav-Verse Ltd., Redevco, Inc., and Golfco Corp., ex rel. Bushkill Township.

Appeal of RELIANCE DEVELOPMENT CORPORATION (at No. 850).

Appeal of Anthony and Jean MERLO, Intervenors (at No. 864).

Superior Court of Pennsylvania.

Submitted Sept. 21, 1977.

Decided Oct. 20, 1978.

Ronald W. Shipman, Easton, for appellant at No. 850, and appellee at No. 864.

Donald F. Spry, II, Bangor, for appellants at No. 864, and appellees at No. 850.

Joseph M. Reibman, Easton, for appellee, Bushkill Tp.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The instant appeal arises from a final decree in equity denying the claims of Mr. and Mrs. Anthony Merlo and the receiver for Reliance Development Corp. to a fund of money currently held in escrow by Bushkill Twp. in Northampton County. The effect of the decree was to award the fund to Bushkill Twp. We find this decree in error, and will reverse and remand for further proceedings. The relevant facts are as follows.

In March, 1969 Reliance Development Corp. purchased a parcel of land in Northampton County upon which it intended to develop a residential housing plan. In furtherance of that purpose Reliance submitted a subdivision plan to the Lehigh-Northampton Joint Planning Commission. The plan, called Camelot, envisioned dividing the parcel into numerous lots which were to be accessible to nearby highways by two proposed new streets called Round Table Drive and Arthur's Court. The planning commission approved the subdivision plan but, in order to assure that Reliance would construct the new streets as needed, and according to specifications, the planning commission required Reliance to deposit money in escrow. Generally speaking, the expected course of performance was that Reliance would construct the streets as it sold and developed the various lots which fronted on them so that the homeowners' would have access to existing roads adjacent to the subdivision. As the streets were constructed Bushkill Twp. would remit portions of the fund equal to five dollars per foot of lot frontage on the streets. In the event of default, Bushkill Twp. was empowered to use the escrowed funds to build the streets through the plan as needed.

Unfortunately, not long after the subdivision plan was approved and the escrow account was established in May, 1970, it became apparent that Reliance's expectations of a successful real estate venture were not going to be fulfilled. Having developed and sold only one lot in the plan, and not having constructed any roadway, Reliance became insolvent. In November, 1971, the real estate was purchased at Sheriff's sale by the Merlos, and in December, 1971, a receiver was appointed for Reliance. The Merlos completed the development and constructed the streets, including so much of the street necessary to provide access to the adjacent highways for the owners of the home which Reliance had sold. When the development was satisfactorily completed and the streets were accepted by Bushkill Twp., Reliance filed a petition for a rule to show cause why Bushkill Twp. should not pay over the money remaining in the escrow account to the use of Reliance. Bushkill Twp. interpleaded the Merlos, who also claimed the fund on the basis of their having completed the streets in accordance with the subdivision plan. Ultimately, the court en banc determined that neither Reliance nor the Merlos had a claim to the fund superior to possessory interest of Bushkill Twp. and, accordingly, awarded the money which now totals $7,446.56, plus interest, to the township. From that decree both the Merlos and the receiver for Reliance have appealed.

The relevant provisions of the written escrow contract between Reliance and Bushkill Twp. establish that the escrow fund was provided in consideration for the approval of the subdivision plan by the joint planning commission. The agreement expressly states that its purpose is "to assure Township that the aforesaid improvements [Round Table Drive and Arthur's Court] will be made by Developer *as lots are sold or developed therein.*" The contract also stated that construction of the streets "*will be made and completed as needed by virtue of sales or development of the lots from [the] Plan.*" The amount of money in escrow was to equal "five dollars per foot on all land sold and/or developed abutting on said streets," and the money so deposited was to

remain in escrow until the "streets are actually installed and accepted by Township, and said funds to be released and paid to developer from time to time as the same are installed and accepted by Township." The contract also purported to provide the sole remedy in case Reliance breached the agreement: "In the event Developer fails to construct said streets within two (2) years of the date of any sale or development in which said construction is contemplated, the funds so deposited in escrow shall be paid to the Township solely for the purpose of constructing said streets and payment to the Township by the escrow holder shall be a complete discharge and release for Developer for liability for street construction as to the land involved." The remaining provisions in the contract involved the provision of a performance bond not here in issue.

As can be seen, the parties were unduly optimistic, because the entire agreement rested upon the supposition that the development would be successfully completed by Reliance. There was no provision made for the possibility that Reliance might voluntarily abandon the subdivision idea, or simply be unable to complete it for any reason. It is the failure of the parties to contemplate such possibilities which provoked the instant dispute.

█ For a variety of reasons, we can find no satisfactory basis in law or equity for the hearing court's decree which, effectively, awarded the escrow fund to the township. First, in its interpleader petition the township expressly disavowed any interest in the escrow fund.[1] The township conceded that the purposes for which the fund had been created had been realized and that the township no longer needed security against their nonoccurrence.[2] Furthermore, the township has not filed a brief with this court in support of the court en banc's decree. Thus, it is clear to us that the

1. Pa.R.Civ.P., Rule 2303 (1978).

2. In fact, prior to acceptance of the streets the township paid a contractor $350 for some minor excavation. All the parties concede that this payment was appropriate and has no bearing on their competing claims to the escrow fund which remains.

court's decree resulted in a windfall to Bushkill Twp. which not even the township thought it deserved, as well as a forfeiture to the parties in interest, Mr. and Mrs. Merlo and the receiver for Reliance Development Corporation. Indeed, the Pennsylvania Municipalities Planning Code, 53 P.S. § 10511 (1972)[3] forbids municipalities from using money deposited to secure the performance of contracts regarding improvements, such as streets, for any purpose other than obtaining the improvements. Since the improvements concerned in the instant case, Round Table Drive and Arthur's Court, have already been created, the effect of the court's decree may have been to provide the township with a sum of money which it cannot use for any other purpose. In any event, the township's position that it was not entitled to retain any of the money was legally sound. When it accepted the Merlo's construction of the streets as satisfaction of the duties attendant to developing Camelot, Reliance's duties under the escrow agreement were discharged, despite the fact that the Merlos were in no sense agents for Reliance. Murray on Contracts § 256 (Rev. ed. 1974); Restatement of Contracts § 421 (1932). Cf. Corbin on Contracts § 1285 (1952). In allowing the township to keep the money despite the fact that the roads had been satisfactorily completed, the hearing court permitted a double recovery for the township and worked a forfeiture on Reliance; a result which the law abhors. See generally 14A Vale's Digest, Equity § 24 (1963). Hence, we can see no rationale to commend the hearing court's decree in the township's favor.

The remaining question is whether the Merlos have demonstrated that they have bestowed any benefit upon Reliance for which Reliance should be held accountable in equity and good conscience. In part the Merlos have beclouded this question by suggesting an overbroad reading of Reliance's duties in developing Camelot.

■ Recalling the escrow agreement, Reliance's duty to construct streets was not absolute, it was conditioned upon

3. Act of July 31, 1968, P.L. 805, art. V, § 511.

its ability to develop and sell lots. See Murray on Contracts § 133 (Rev. ed. 1974); Restatement of Contracts, 2d § 250 (1973). Had Reliance never developed the plan, its duty to construct the streets would not have been activated. See Murray on Contracts § 135 (Rev. ed. 1974).[4] Thus, the Merlo's argument that Reliance was dutybound to construct Round Table Drive and Arthur's Court, and that the Merlos satisfied that duty when they developed the plan and built the streets, is erroneous. In developing the lots, and thereby activating the duty to build the streets according to the subdivision plan, the Merlos did not bestow any benefit on Reliance beyond building so much of the street as was necessary to provide access for the one lot which Reliance had developed and sold. In fact, the Merlo's development of the plan required them to build the streets. As the Pennsylvania Municipalities Planning Code, 53 P.S. § 10507 (1972) provides:

"Where a subdivision and land development ordinance has been enacted by a municipality under the authority of this article no subdivision or land development of any lot, tract or parcel of land shall be made, no street, sanitary sewer, storm sewer, water main or other improvements in connection therewith shall be laid out, constructed, opened or dedicated for public use or travel, or for the common use of occupants of buildings abutting thereon, except in accordance with the provisions of such ordinance."

That being the case, the Merlo's additional development of the plan created a liability which only they were obliged to assume, and in this respect Reliance was not unjustly enriched.

■ This conclusion does not mean that the Merlos are not entitled to any recovery from the escrow fund, because

4. While the problem is academic in the context of the instant case, if it had become apparent that the plan would never be developed and that the purpose for creating the escrow fund had been frustrated, the condition might be deemed excused with the fund being returned to Reliance. See Murray on Contracts § 202 (Rev. ed. 1974); Corbin on Contracts § 1355 (1952).

permitting Reliance to retain the full sum of money escrowed would redound in part to its unjust enrichment. Restatement of Restitution § 1 (1937). The Merlos did perform a duty which Reliance had undertaken to perform when the Merlos built so much of the street as was necessary to provide access to the lot Reliance had developed and sold.[5] In such circumstances, in order to prevent unjust enrichment, courts will impose an equitable lien on the fund of money. D. Dobbs, Remedies 249 (1973); Restatement of Restitution § 211 (1937). Since the construction of the streets represented performance of services redounding to Reliance's benefit, the proper measure of restitution is in the nature of quantum meruit. D. Dobbs, Remedies 237 (1973). The focus of the remedy is to measure the value of the benefit to Reliance (i. e., the cost of construction of that portion of the street which Reliance should have constructed), which may be equal to the cost of construction which the Merlos suffered to pay. *Id.* at 261. Since the facts necessary to establish the amount of this claim were not proved in the prior hearing, we must remand for a hearing at which such proof may be received.[6]

The decree of the court en banc is vacated and the case is remanded for further proceedings consistent with this opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

5. It might also be noted that to the extent the fund provided security for completing the plan which the Merlos otherwise would have had to provide, Reliance has already provided the Merlos with some benefit through the escrow account. Neither of the parties have alluded to this point, however, so we shall not consider it.

6. Obviously, in constructing this portion of the street the Merlos were not volunteers since it was necessary to do so to provide ingress and egress to the other lots. See D. Dobbs, Remedies 304 (1973); Restatement of Restitution § 113 (1937). Compare *Gallagher, Magner & Solomento v. Aetna Cas. & Sur. Co.*, 214 Pa.Super. 233, 252 A.2d 206 (1969).